# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| HAROLD G. BLACKWELL,  ) | |
|     Plaintiff,  ) | |
| ) | |
| v.  ) | Civil Action No. 13-00564-N |
| ) | |
| CAROLYN W. COLVIN, Acting  ) | |
| Commissioner of Social Security,  ) | |
|     Defendant.  ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Harold G. Blackwell ("Blackwell") has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). By the consent of the parties (*see* Doc. 22), the Court has designated the undersigned United States Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.[1] (*See* Doc. 24).

With leave of the Court, the parties have jointly waived oral argument. (*See* Docs. 21, 23). Upon consideration of the administrative record (hereinafter cited as "R. [page number(s)]") (Docs. 12-15) and the parties' briefs (Docs. 16, 19), the Court finds that the Commissioner's decision denying Blackwell benefits is due to be **REVERSED** and **REMANDED**.

---

[1] Thus, an appeal taken from the judgment entered in this action may be made directly to the Eleventh Circuit Court of Appeals. *See* § 636(c)(3); Fed. R. Civ. P. 73(c).

I. **Procedural Background**

On March 17, 2010, Blackwell filed an application for DIB[2] and SSI[3] (R. 210-74), alleging disability due to paranoid schizophrenia/anxiety stress disorder and arthritis with an onset date of November 1, 2006 (*see* R. 210, 214, 251). After his application was initially denied on June 3, 2010 (R. 159-63), Blackwell timely requested a hearing (R. 165-67). A hearing on Blackwell's application was held before an Administrative Law Judge ("ALJ") in Mobile, Alabama, on August 16, 2011, at which Blackwell appeared and testified. (*See* R. 101-26). On August 25, 2011, the ALJ issued an unfavorable decision on Blackwell's application, finding that Blackwell was not disabled as defined in the Social Security Act. (R. 32-46). Blackwell requested review of the ALJ's decision by the Appeals Council (*see* R. 31). On October 16, 2013, the Appeals Council issued its decision declining review (R. 1-7), thus making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2014) ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action."); *Crow v. Comm'r, Soc. Sec. Admin.*, No. 13-14813, 2014 WL 3035602, at *3 (11th Cir. July 7, 2014) (*per curiam*) (unpublished) ("When the Appeals Council denies review of the ALJ's decision, we review the ALJ's decision as the Commissioner's final decision." (citing *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

---

[2] Under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

[3] Under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c.

On November 18, 2013, Blackwell timely filed this action for judicial review of the Commissioner's final decision under § 405(g). (*See* Doc. 1).

## II.     **Standard of Review**

In all Social Security cases, a plaintiff (sometimes referred to as a claimant) bears the burden of proving that he or she is unable to perform his or her previous work.[4] *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether that burden has been met, and thus whether a claimant has proven that he or she is disabled, the examiner (most often an ALJ) must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history, *see id.*; and, in turn,

> uses a five-step sequential evaluation to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the [residual functional capacity, or] RFC[,] to perform her past relevant work; and (5) if not, whether, in light of the

---

[4]

> The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir.1986).

*Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

3

claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 870 (11th Cir. Feb. 9, 2012) (*per curiam*) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted).[5]

If, in steps one through four of the above-articulated five-step evaluation, a plaintiff proves that he or she cannot do his or her past relevant work, it then becomes the Commissioner's burden, at the fifth step, to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Id.*; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court on judicial review is to determine whether the Commissioner's decision to deny a plaintiff benefits is supported by substantial evidence. Substantial evidence is defined as "more than a scintilla" and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however,

---

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

4

from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 F. App'x 995, 996 (11th Cir. Apr. 1, 2010) (*per curiam*) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is **supported by** substantial evidence." *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)) (emphasis added).

### III.  Claims on Appeal

(1) "The ALJ reversibly erred in awarding 'significant weight' to the opinion of examining professional, John S. Marshall, III, certified counselor but failing to address the portions of Mr. Marshall's opinion that state [Blackwell] would often have deficiencies of concentration, persistence, and pace, that [Blackwell] would have repeated expected episodes of decompensation, and that [Blackwell] would have a marked limitation in completing work-related tasks in a normal workday or workweek." (Doc. 16 at 1-2).

(2) "The ALJ reversibly erred in failing to ask the vocational expert a question that fully encompassed [Blackwell]'s residual functional capacity…" (*Id.* at 2).

### IV.  Analysis

*First Claim of Error*

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step, discussed below. 20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will

5

conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567.4 Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ, "[a]fter careful consideration of the entire record,…f[ound] that [Blackwell] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Blackwell] can only perform work that will allows [sic] for mildly to moderately impairment [sic] in responding appropriately to supervision, co workers and work pressures in a work setting[, and] is limited to performing simple routine repetitive task [sic] with no more than occasional interaction with others…"[6] (R. 38-39).

In making this determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "opinion evidence," based on the requirements of relevant regulations and agency rulings. The ALJ specifically considered, *inter alia*, the testimony of Blackwell and the reports of Dr. John W. Davis and Mr. John S. Marshall, III.

Regarding Mr. Marshall, the ALJ's decision stated as follows:

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy." *Phillips*, 357 F.3d at 1239 n.4.

> Reporting on the Mental Status Examination of July 13, 2009, John S. Marshall III, a Nationally Certified Counselor, reported that the claimant has Schizophrenia, Paranoid Type (by history), and Alcohol Abuse (by history). He assigned the claimant a Global Assessment of Functioning Score of 65. In ***the Diagnostic and Statistical Manual of Mental Disorders-Fourth Edition (DSV-IV***, [sic] it stipulates that a GAF score of 51 through 60 is indicative of moderate limitations in social, academic or occupational functioning. A GAF score of 64 is indicative of "mild" limitations in this areas [sic], which coincide, with the assessment of Dr. Davis.[7] Moreover, Mr. Marshall in fact stated that the claimant had mild limitations in maintaining concentration, persistence or pace resulting in failure to complete tasks. He also opined that the claimant would have mild difficulties in responding appropriately to supervisors and to co-workers. He felt, however, that the claimant would "likely" experience moderate difficulties responding appropriately to work pressure primarily based on the intensity and place of episodes of his schizophrenia. He added that simple tasks would pose mild problems for him. Intricate and detailed repetitive tasks would likely result in moderate difficulties (Exhibit B-6F). The assessment is afforded significant weight.

(R. 39-40).

Blackwell argues that "[a] full reading of the Mental Residual Functional Capacity Evaluation completed by Counselor Marshall shows that []he opined that [Blackwell], secondary to his schizophrenia, would often have deficiencies of concentration, persistence, and pace, that [Blackwell] would have repeated expected episodes of decompensation, and that [Blackwell] would have a marked limitation in completing work-related tasks in a normal workday or workweek." (Doc. 16 at 3 (citing R. 333-43)). Blackwell claims that "[i]f, as stated in the opinion, significant weight was given to Mr. Marshall's report, these limitations would significantly erode the occupational based [sic]." (*Id.*). Thus, Blackwell argues, remand is warranted because "[m]ore clarification is needed on what weight was given the entirety [sic] to Mr.

---

[7] Clinical psychologist John Davis, Ph.D., conducted a consultative mental examination of Blackwell on May 5, 2009. (R. 328-32).

7

Marshall's report." (*Id.*).

As the Commissioner points out, a certified counselor such as Mr. Marshall is not included in the Social Security regulations as an "acceptable medical source[] to establish whether [a claimant] **ha[s]** a medically determinable impairment(s)…" 20 C.F.R. § 404.1513(a) (emphasis added). *See also* 20 C.F.R. § 416.913(a); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (*per curiam*) ("[T]he ALJ's decision to discount chiropractor Reckford's opinion was supported by substantial evidence…First, Reckford is not considered an 'acceptable source' and, thus, his opinion cannot establish the existence of an impairment. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding chiropractors from the list of 'acceptable medical sources' whose opinions may be considered in determining the existence of an impairment)."); *Szilvasi v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 898, 901 (11th Cir. 2014) (*per curiam*) ("As a preliminary matter, because McCartney is a therapist, not a physician, his opinions are not an acceptable medical source to establish the existence of a medical impairment. *See* 20 C.F.R. § 404.1513(a), (d)(1).").

> Pursuant to the regulations, in addition to evidence from acceptable medical sources, the ALJ "may also use evidence from other sources to show the severity" of the claimant's impairment and how it affects her ability to work. 20 C.F.R. § 404.1513(d)…Social Security Ruling 06–03p provides that
>
>> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.
>
> SSR 06–03p.

8

*De Olazabal v. Soc. Sec. Admin., Com'r*, No. 13-15285, 2014 WL 4364889, at *4 (11th Cir. Sept. 4, 2014) (*per curiam*) (unpublished).[8] "The ruling states that the factors outlined for determining the weight to afford a medical opinion in 20 C.F.R. §§ 404.1527(d) and 416.927(d)[9], 'can be applied to opinion evidence from "other sources," ['] and 'these factors represent basic principles that apply to consideration of all opinions from medical sources who are not "acceptable medical sources." ['] Additionally, '[t]he evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case' and '[n]ot every factor for weighing opinion [ ] evidence will apply in every case.' " *Butler v. Astrue*, Civil Action No. 11-00295-C, 2012 WL 1094448, at *3 (S.D. Ala. Mar. 30, 2012) (quoting SSR 06–03p, 2006 WL 2329939, at *4 (Aug. 9, 2006)) (Cassady, M.J.) (internal citation and some quotations omitted). The relevant weighing factors include:

- How long the source has known and how frequently the source has seen the individual;

- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

---

[8] " 'Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.' *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed. 2d 967 (1990) (internal quotations omitted). Although SSA rulings are not binding on this Court, we accord the rulings deference. *See Fair v. Shalala*, 37 F.3d 1466, 1468–69 (11th Cir. 1994)." *De Olazabal*, 2014 WL 4364889, at *4.

[9] In the most current versions of 20 C.F.R. §§ 404.1527 and 416.927 (effective Aug. 24, 2012), the weighing factors are in section (c) rather than (d).

9

• Any other factors that tend to support or refute the opinion.

SSR 06-03P, 2006 WL 2329939, at *4-5.

Contrary to Blackwell's assertion, the ALJ at Step Four specifically noted Marshall's finding that Blackwell "had moderate limitations in maintaining concentration, persistence or pace resulting in failure to complete tasks" and gave it "significant weight." (R. 40). This opinion is consistent with that of Dr. John W. Davis, Ph.D., an examining clinical psychologist, and therefore "an acceptable medical source," *see* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2), who "reported that [Blackwell]'s ability to show concentration, persistence or pace in an age appropriate manner was from mild to moderately impaired…" (R. 38. *See also* R. 328-32).

As for episodes of decompensation, the ALJ determined, at Step Two, that Blackwell had "experienced no episodes of decompensation, which have been of an extended duration." (R. 38). This finding is inconsistent with Marshall's opinion, who found that "episodes of decomposition of workability would likely occur at least on 3 occasions in a year." (R. 338, 340). However, Marshall, not being an "accepted medical source," could not establish the *existence* of the impairment of decomposition. *See* 20 C.F.R. § 404.1513(a). Rather, his opinion could only be offered to demonstrate the *severity* and the *effect on the claimant's daily life* of the impairment of decomposition once the *existence* of that impairment had been established by an "accepted medical source." *See* 20 C.F.R. § 404.1513(d); *De Olazabal*, 2014 WL 4364889, at *4. The ALJ, in Step Two, had determined that Blackwell did not suffer from an impairment of decomposition, and Blackwell has pointed to no record evidence from another "accepted medical source" indicating that this finding was error; as such, there was no need to

consider Marshall's opinion regarding the severity or effect of an impairment whose existence had not been shown.

Regarding Blackwell's ability to complete work-related tasks in a normal workday or workweek, Marshall wrote in his report:

> Mr. Blackwell will likely have Mild difficulties understanding, carrying out and remembering instructions. He will probably have Mild difficulties responding appropriately to supervision and to co-workers.
>
> He would likely experience Moderate difficulties responding appropriately to work pressures primarily based on the intensity and phase of his schizophrenia. Simple tasks would pose Mild problems for him, if at all. However, the more intricate and detailed repetitive tasks would likely result in his having Moderate difficulties (In extreme periods of psychosis the difficulties may become Marked).
>
> Overall his complete work related activities would probably result in Marked difficulties.

(R. 338-39.). This assessment was also reflected on a Mental Residual Functional Capacity Questionnaire attached to the report. (R. 340-41).

Essentially, in this claim of error, Blackwell "faults the ALJ for not explicitly assigning weight to every part of [Mr. Marshall]'s opinion and for not discussing [Mr. Marshall]'s finding that [Blackwell would have a marked limitation in completing work-related tasks in a normal workday or workweek]. However, 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]' " *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671 (11th Cir. 2014) (11th Cir. July 14, 2014) (per curiam) (unpublished) (quoting *Dyer v. Barnhard*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)) (alterations added).

Moreover, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [Marshall]'s opinion, this error was harmless because it is still

11

clear that the ALJ's rejection of the portions of [Marshall]'s opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantial evidence, *see Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983) (classifying certain errors as harmless in the context of the substantial-evidence standard)." *Id.* As noted by the ALJ, on May 15, 2009, Dr. Davis "reported that despite the claimant's Schizophrenia, he was only mild to moderately limited and could still perform simple repetitive tasks." (R. 39 (citing R. 328-32)). The ALJ found Blackwell's own testimony "concerning the intensity, persistence and limiting effects of" his reported symptoms to be "not credible to the extent they are inconsistent with" the ALJ's RFC assessment (R. 39), and Blackwell does not challenge this determination on appeal.

Dr. John Pybass, M.D., had provided responses to a Mental Residual Functional Capacity Questionnaire identical to the one attached to Marshall's report.[10] (R. 865-66). Like Marshall's report, Dr. Pybass's questionnaire indicated that Blackwell would have "marked" ability to "[c]omplete work related activities in a normal workday or workweek." (R. 866). Regarding Dr. Pybass's assessment, the ALJ wrote in Step Four:

> Although [Dr. Pybass] indicated several marked areas of functioning and frequent deficits of concentration, persistence or pace, there is no accompanying narrative of treatment and these marked categories are contradictory to more recent Psychological Evaluations as discussed above (Exhibit B-16F[[11]]). (See also Exhibit B-3F[[12]] and B-5F[[13]]), as well as the

---

[10] The ALJ's decision states that Dr. Pybass's questionnaire was completed on July 16, 2009 (*see* R. 40) – three days after the date of Marshall's report. However, the questionnaire itself appears to be dated "7/16/0<u>8</u>" (R. 866) – approximately one year before the date of Marshall's report.

[11] Dr. Pybass's July 16, 2009 questionnaire (R. 865-66).

[12] July 6, 2007 examination report of Dr. David Formwalt, Psy.D., a clinical psychologist (R. 311-15).

[13] Dr. Davis's May 15, 2009 report (R. 328-32).

12

moderate limitations imposed on the Psychiatric Review Technique form by the State agency reviewing psychologist Dr. Joanna Koulianos (Exhibits B-9F and B-10-F[14]).

(R. 40).

Marshall's assessment of a "marked" limitation in completing work-related tasks in a normal workday or workweek is merely cumulative of Dr. Pybass's assessment, and Blackwell does not contest on appeal the ALJ's rejection of Dr. Pybass's "marked" assessments in favor of the lesser assessments of other physicians – indeed, he does not argue that any of the ALJ's stated evidentiary determinations at Step Four are erroneous. "[T]he ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion.' " *Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 13 (11th Cir. 2012) (per curiam) (quoting *Sryock v. Heckler,* 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (quotation omitted)). The Eleventh Circuit law is clear that, "[e]ven if the evidence preponderates against the Commissioner's findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Crawford*, 363 F.3d at 1158-59 (alterations added) (quotation omitted). Here, the ALJ cited to record evidence medical evidence in rejecting a finding of "marked" limitations for Blackwell, and Blackwell does not contest the propriety of that evidence. Accordingly, as substantial evidence supports the ALJ's determination that Blackwell did not suffer from "marked" limitations, any failure to specifically cite Marshall's assessment to the contrary was harmless.

### ***Second Claim of Error***

"At step five, the Commissioner must determine that significant numbers of jobs

---

[14] (R. 747-64 (both dated April 29, 2010)).

exist in the national economy that the claimant can perform. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (internal citations omitted). Here, under Step Five, the ALJ used only the testimony of a vocational expert and did not use the Guidelines.

"A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240. " 'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.' " *Winschel*, 631 F.3d at 1180 (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (*per curiam*)). However, "the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (*per curiam*). *Accord, e.g.*, *Clyburn v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 892, 895 (11th Cir. 2014) (*per curiam*); *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 742 (11th Cir. 2008) (per curiam)

At the August 16, 2011 hearing, the ALJ posed the following hypothetical question to the testifying vocational expert:

> Assume I find a hypothetical individual the same age as Mr. Blackwell with the same educational level and vocational history. And assume further I find the following additional limitations: that this hypothetical individual can perform a full range of light work with no significant

14

postural limitations or manipulative limitations. The environmental limitations would be avoid hazards, dangerous machinery, and heights. And mental limitations would be situational or well -- schizoaffective diagnosis, NOS.[15] Given those limitations, in your opinion, would this hypothetical person be able to perform any of the work which Mr. Blackwell previously performed?

(R. 121-22). In response to this hypothetical, the vocational expert testified that representative occupations which the hypothetical person would be able to perform included "production assembler," "garment bagger," and "courier." (R. 122).

Blackwell argues that "[t]his hypothetical is problematic because it does not present any vocational limitations based on [Blackwell]'s mental limitations, though the record clearly reflects mental diagnoses of schizophrenia, contains medical reports detailing mental limitations…, and shows that the ALJ's own RFC included findings of more specific mental limitations." (Doc. 16 at 4).

In response, the Commissioner does not appear to dispute Blackwell's characterization of this hypothetical as "problematic." (*See* Doc. 19 at 13-15). Instead, she points to a hypothetical posed by a different ALJ to the same vocational expert at a hearing two years earlier, on August 5, 2009, that she argues adequately encompassed all of Blackwell's mental limitations. (*See id.*). The same vocational expert, in response to the August 2009 hypothetical, identified two of the representative jobs – production assembler and garment bagger – that he also listed in response to the August 2011 hypothetical.[16]

However, in the opinion that constitutes the Commissioner's final decision, there

---

[15] "Not Otherwise Specified"

[16] The vocational expert cited "poultry eviscerator," rather than "courier," as a representative job at the August 2009 hearing.

is no indication that the deciding ALJ considered the vocational expert's August 2009 testimony at Step Five. Instead, the ALJ references the vocational expert's testimony only from the August 2011 hearing.[17]

In *Winschel*, "the ALJ determined at step two that [the claimant]'s mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested [the claimant]'s ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical." *Winschel,* 631 F.3d at 1181. Holding that "the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert[,]" the Eleventh Circuit found that an ALJ's hypothetical question to a vocational expert "failed to include or otherwise implicitly account for all of [the claimant]'s impairments" – and thus did not constitute "substantial evidence." *Id.* The Eleventh Circuit concluded by stating that, "[o]n remand, the ALJ must pose a hypothetical question to the vocational expert that

---

[17] (*Compare* R. 122 [Aug. 16, 2011 Hearing Trans., p. 20] ("There would be light, unskilled occupations that would be consistent with such a hypothetical. Maybe something like a production assembler. That's light and unskilled. And that's DOT code 706.687-010. Nationally is approximately 488,000. 7,300 statewide. Or maybe something like garment bagger. That's light and unskilled with a SVP level of 2. And that's DOT code 920.687-018. Listed nationally, there would be approximately 118,000 and 2,100 statewide. Or maybe something such as a courier. And that's light and unskilled, with an SVP level of 2. And that's DOT code 230.667-010. Nationally, would be about 124,000. And statewide, 12 -- about 1,200.") *with* R. 41 ("To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as (1). Production assembly, (DOT 706.687-010) light, unskilled, with 7,300 in the National and 488 in the State economy. (2) Garment bag assembler (DOT Code 920.687-018), unskilled and light, with 2,100 in the State and 118,000 located in the National economy (3). Courier (DOT Code 230.667-010) unskilled, light with 124,000 such jobs Nationally and 1,200 located in the State.")).

specifically accounts for [the claimant']s moderate limitation in maintaining concentration, persistence, and pace." *Id.*

Here, the ALJ expressly determined that Blackwell "has the residual functional capacity to perform light work…except [he] can only perform work that will allows [sic] for mildly to moderately impairment [sic] in responding appropriately to supervision, co workers, and work pressures in a work setting[,]" and that he "is limited to performing simple routine repetitive task [sic] with no more than occasional interaction with others…" (R. 38-39). However, his hypothetical question to the vocational expert at the August 2011 hearing did not include his express finding that Blackwell would be limited to performing simple, routine, repetitive tasks with only occasional interaction with others. Moreover, there is no indication in the Commissioner's final decision that the ALJ considered the testimony of the vocational expert at the August 2009 hearing. As such, "[b]ecause the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of [Blackwell]'s impairments, the vocational expert's testimony is not 'substantial evidence' and cannot support the ALJ's conclusion that [Blackwell] could perform significant numbers of jobs in the national economy." *Winschel*, 631 F.3d at 1181. Therefore, the ALJ's determination at Step Five is due to be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

## V. Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the decision of the Commissioner of Social Security denying Blackwell benefits is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v.*

*Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this Court's decision. The remand pursuant to sentence four of § 405(g) makes Blackwell a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Final judgment in accordance with Federal Rule of Civil Procedure 58 and this Memorandum Opinion and Order shall issue by separate document.

**DONE** and **ORDERED** this the 18th day of November 2014.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**